ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| RAFAEL NOLASCO<br><br>Parte Recurrida<br><br>v.<br><br>AMBIENTE MODERNO, INC. PRES, ALFREDO ÁLVAREZ<br><br>Parte Recurrente | TA2025RA00384 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: PON-2025-0005907<br><br>Sobre:<br>Ley Número 5 del 23 de abril de 1973 (Ley Orgánica DACO) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de febrero de 2026.

Comparece ante este foro revisor, Ambiente Moderno, Inc. (Ambiente Moderno o parte recurrente) y nos solicita que revoquemos la *Resolución* emitida y notificada el 6 de noviembre de 2025 por el Departamento de Asuntos del Consumidor (DACo) y, en consecuencia, desestimemos la querella presentada por el Sr. Rafael Nolasco (señor Nolasco o parte recurrida). Mediante el referido dictamen, el foro administrativo ordenó a Ambiente Moderno reembolsar al señor Nolasco la suma de $2,112.93 y gestionar el recogido del mueble en la residencia de este último.

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen recurrido.

**I.**

Según surge del expediente, el caso de autos se originó el 17 de marzo de 2025, cuando el señor Nolasco instó una *Querella* contra Ambiente Moderno. En esta alegó que adquirió unos muebles en dicho establecimiento por la suma de 2,112.93. Sostuvo que la

vendedora le informó que los muebles eran de cuero bovino y le aseguró su durabilidad y resistencia, lo que le convenció a efectuar la compra. Manifestó, además, que transcurridos tres (3) años y cinco (5) meses, los muebles comenzaron a desgastarse, perder color y la parte superior se deshizo. Añadió que acudió a la tienda a plantear su inquietud y que, tras realizar un reclamo ante el servicio al cliente, se le informó que el material no era cuero genuino y que únicamente se le ofrecerían seiscientos dólares ($600.00), condicionados a la entrega del mueble. Por tales razones, solicitó al foro administrativo que se le entregaran muebles del mismo valor o, en la alternativa, se le devolviera el dinero invertido en la compra.

El 22 de julio de 2025 se notificó a las partes una *Citación a Vista Administrativa*, señalada para celebrarse el 14 de agosto de 2025.

Posteriormente, el 11 de agosto de 2025, Ambiente Moderno presentó su *Contestación a Querella*. Mediante la misma, sostuvo que el mueble en controversia fue adquirido por el señor Nolasco el 29 de octubre de 2021 y que no fue sino hasta febrero de 2025 que este informó, por primera vez, los alegados desperfectos. Adujo que la garantía del mueble era de un (1) año a partir de la fecha de compra y que se trataba de una garantía limitada, por lo que expiró en octubre de 2022. No obstante, manifestó que evaluó el reclamo del consumidor y que, a pesar de encontrarse fuera del período de garantía, como gesto deferente decidió ofrecerle un crédito parcial calculado conforme a la depreciación del mueble. Reiteró que la mercancía se encontraba fuera de garantía desde octubre de 2022 y expuso que la alternativa del crédito parcial continuaba disponible mediante el procedimiento correspondiente, por lo que solicitó la desestimación de la querella.

Celebrada la vista administrativa y desfilada la prueba documental y testifical, el 6 de noviembre de 2025, el DACo dictó la

*Resolución* recurrida, en la cual formuló las siguientes determinaciones de hechos:

1. La parte querellante *Rafael Nolasco,* casado con Winda Burgos tiene dirección en la Urbanización Santa Elena calle Ucar I 12, Guayanilla, P.R., 00656. Dirección electrónica; rafael2857@yahoo.com[.]

2. La parte querellada: *Ambiente Moderno, Inc.* tiene dirección física en: 245 Avenida Roosevelt, San Juan, P.R. 00918; y dirección postal: PO Box 51937, Levittown, Toa Baja, P.R., 00950-1937. Dirección electrónica: info@ambientemoderno.com. Su Presidente es Alfredo Álvarez.

3. El 17 de marzo de 2025 el DACO, Regional Ponce, notificó de la querella presentada por el señor Rafael Nolasco a través de la plataforma digital del Departamento siéndole asignado el número de querella PON-2025-0005907.

4. En síntesis, el señor Rafael Nolasco, reclama contra Ambiente Moderno Inc. lo siguiente: "compramos unos muebles en ambiente moderno. Según la vendedora eran 100% cuero bovino. Ella nos convenció de la durabilidad y resistencia del cuero y terminamos comprándolo. En 3 años y 5 meses se han desgastado, han perdido el color y la parte superior se está deshaciendo. Fuimos a la tienda con la inquietud y la empleada nos comenta que le envíe fotos que pasarían la queja a servicio al cliente. En unos días recibo su llamada, me dice que darán 600 dólares, que tengo que entregarle mis muebles y que en realidad el material no es cuero. Le dije que lo consultaría con mi esposa. En unos días llaman a mi esposa para preguntar qué decisión tomamos. Mi esposa le dice que es una falta de respeto ofrecer 600 dólares por unos muebles que pagamos 2,112.93 y que no tenemos que entregar nada ya que son mis muebles. Yo pagué por ellos, esos muebles no fueron rentados, son de mi propiedad.

5. El 17 de marzo de 2025 se remitió a las partes Notificación de Querella. El 22 de julio de 2025 se cursó a todas las partes Notificación de Vista Administrativa a celebrarse el 14 de agosto de 2025 a las 10:30 am en el Centro de Gobierno Calle Celis Aguilera Suite 01 en Santa Isabel[,] Puerto Rico.

6. El 11 de agosto de 2025 el Lcdo. Rafael Román Jiménez en representación de Ambiente Moderno Inc. presentó Moción Asumiendo Representación Legal; Contestación a Querella.

7. En Contestación a Querella expone que la parte querellante compró un mueble seccional "Windsor" modelo FD 2905 "Left Chaise" - color blanco - precio: $1,895.00 m[á]s impuestos; que en febrero 2025 por primera vez informó alegados desperfectos: estaba manchado y se estaba despintando por lo que comenzó a reclamar vía correo electrónico a pesar de tener conocimiento de que el mueble no tenía garantía; que la garantía es por 1 año, en defectos de manufactura[,] por lo que estuvo vigente hasta octubre de 2022. Que la parte querellada como gesto deferente brindó a la parte querellante un crédito parcial con un cálculo de depreciación (c[á]lculo utilizado es: precio de venta ÷ 5

años (durabilidad estimada de los muebles) x la cantidad de años de uso = crédito parcial. $1,895.00 ÷ 5 años = $379 x 1.6 (3.4 años de uso) = $606.40. Que no estando de acuerdo, (no de acuerdo en devolver el mueble en cuestión) la parte querellante exige que se le entregue un mueble con el mismo valor pagado en el año 2021 o que se le devuelva el dinero[.]

Así también se expuso de las Defensas Afirmativas, solicitó que se declare No Ha Lugar la querella presentada y se le imponga al querellante el pago razonable en honorarios de abogado. (síntesis nuestra).

8. El 14 de agosto de 2025 se celebró vista administrativa, comparecieron de manera presencial la parte querellante Rafael Nolasco y su esposa Winda Burgos; como parte querellada, compareció mediante video conferencia el Lcdo. Rafael Román Jiménez en representación de [A]mbiente [M]oderno y Frances Cáceres, Gerente de Servicios - AMBIENTE MODERNO INC.

9. Según declarado en la vista administrativa, la compra objeto de esta reclamación se realizó en Ambiente Moderno (San Juan) por Rafael Nolasco y su esposa. Así el querellante manifestó que con su esposa, eligieron la tienda porque "tiene un buen prestigio y venden calidad, y los muebles son muy bonitos, sobre todo; que no recuerda el nombre de la vendedora y que el y su esposa habían decidido como pareja comprar unos muebles de cuero; señalaron que fueron orientados fuera de la tienda.

10. El Querellante expresó que el salón de ventas les llamó la atención ese modelo de asiento: mueble seccional, completo y color blanco, le llamó la atención por ser bonito. En la tienda la empleada les contestó preguntas sobre el precio: precio regular $5,478 con rebaja a $1,895; no sabían si era en especial o en liquidación.

11. El Sr. Nolasco preguntó sobre qué tipo de cuero era el mueble y la empleada le dijo que era de vaca bovinas, que "eran de calidad, que mantienen la durabilidad y flexibilidad. Y que después que le diera mantenimiento adecuado podía durar hasta 10 años." Para el mantenimiento, el Sr. Nolasco compró fuera de la tienda "unos líquidos humectantes y acondicionadores para limpieza… directamente para cuero."

12. El Sr. Nolasco reconoció que "los muebles tenían garantía de un año" y precisó que "él no va por la garantía", sino que, al observar el deterioro, no siendo experto, ello le trajo frustración e inquietud. Afirmó que "a los dos años y medio empezaron a deteriorarse, comenzaron a perder de su material," lo que le provocó frustración e inquietud y por ello comenzó a indagar. Describió que el mueble "empezó a perder una capa superficial y despistando (despintando)".

13. Al percatarse del deterioro, el Sr. Nolasco reclamó de manera presencial a Ambiente Moderno el 10 de febrero de 2025. En la visita les tomaron los datos y se comunicaron luego; ese mismo 10 de febrero de 2025 Ambiente Moderno les comunicó que su reclamación había sido enviada a servicio al cliente y se comunicarían de 3 a 5 días laborales.

14. La Sra. Winda Burgos (esposa del querellante) declaró que el 2 de marzo se comunicó con Ambiente Moderno para "esperar respuesta sobre su reclamación." El Sr. Nolasco indicó que luego recibió una llamada: "lo que le ofrecerían sería $600 dólares de crédito para comprar otros muebles y que tenía que devolver los que tenía," a lo que "notificó que lo consultaría con su esposa."

15. Posteriormente, Ambiente Moderno llamó y los querellantes expresaron que no estaban de acuerdo con los $600 y no querían devolver los muebles por ser su pertenencia; solicitaron en cambio "la devolución del dinero pagado ($2,112) con IVU... o unos muebles." Se les indicó que evaluarían el reclamo por haber intervenido una intermediaria.

16. Luego de esto, la Sra. Winda Burgos comunicó: "Al no tener contestación de ustedes haré lo que me corresponde," y el 17 de marzo presentó la querella en el DACO.

17. Consta en expediente la factura (Sales Order 502404) y fotografías de los muebles, así como mensajes relacionados con la gestión de servicio. La factura describe el mueble "Windsor" FD2925 seater sofa corner left chaise LHF w (USB port 620 White Leather Touch. Precio; $1,895.00 con IVU $2,112.93

18. Durante el interrogatorio del Lcdo. Román Jiménez, el Sr. Nolasco confirmó:
    - "que él y su esposa escogieron el mueble,"
    - "que no recuerda nombre del vendedor,"
    - "que la persona que le orientó le dijo que el material era de cuero, de vaca bobina y que eran flexibles y duradera, que le duraría como 10 años si le daba mantenimiento."
    - Reconoció "que en la factura dice White Leather Touch y que nadie le explicó qué significaba esto, que no es experto en ello pero entiende que es cuero táctil"
    - "que reconoce que la garantía era de un año,"
    - Que si le dicen que no es de cuero no lo compraría.
    - Que el mueble está en la sala en área que casi no se utiliza.

19. La gerente de Servicios, Frances Cáceres Negrón (empleada en Ambiente Moderno desde 2016), declaró que su labor consiste en tomar reclamaciones, garantía con fabricantes y todo lo relacionado a servicio. Informó que el Sr. Nolasco compró en octubre de 2021 un seccional color blanco y "llegó en febrero de este año, alegando los desperfectos." Que "se le dijo que la pieza estaba fuera de garantía, y que se evaluó su reclamación con el fabricante como internamente."

20. Expuso que "con el fabricante, no había garantía," pero que Ambiente Moderno "quería darle un crédito de según una fórmula de depreciación según la vida de la pieza y el tiempo de uso con el fin de mantener el cliente y resolver su situación, a lo que estos se negaron." Aclaró que "la mercancía no es en cuero" y que "se le aclaró que el leather touch... es piel en todo lo que el cuerpo toca (sentadera, brazos y espalda). Solo eso es en piel. Lo demás es en vinil, material sintético para poder darlo a ese precio."

21. Sobre las fotos presentadas por los querellantes, indicó que se aprecia en la sentadera unas manchas y áreas más oscuras como si estuviese perdiendo el tinte, y que en el área que no es "leather touch" lo único que se puede visualizar es las sentaderas con daños. Agregó que lo que aparenta ser una mancha se comenzó a pelar. Que, al ser el material de cuero el de mayor contacto con el cuerpo, requiere más mantenimiento y que condiciones como sol, humedad, calor y ventanales, así como productos abrasivos, "pueden afectar el tiempo de vida de la pieza," lo que "va a depender de los factores que estén en la residencia["].

22. Señaló que "sigue vigente la alternativa, un crédito parcial de 606.40 más el impuesto para compra futura; al utilizar el crédito el cliente debe devolver la pieza como se hace en ese tipo de reclamaciones." Añadió que "Ambiente Moderno no puede presumir qué fue lo que [el] vendedor le dijo ni hay nota en factura o sistema, pero que siempre se le aclaró que la mercancía era en leather touch."

Así las cosas, mediante la referida determinación, el foro administrativo ordenó a Ambiente Moderno reembolsar al señor Nolasco la cantidad de $2,112.93, correspondiente al valor total del mueble, y dispuso, además, que debía gestionar el recogido del mueble en la residencia del señor Nolasco.

Inconforme, el 8 de diciembre de 2025, la parte recurrente compareció ante *nos* mediante un recurso de *Revisión Administrativa*, en el cual alegó la comisión del siguiente error:

Erró el Departamento de Asuntos del Consumidor al apreciar la prueba y dictar Resolución, mediante la cual determinó que el consentimiento del consumidor estuvo viciado por error esencial sobre una cualidad determinante del bien; que la parte recurrente incumplió su deber de información; y que procede la resolución del contrato con restitución recíproca de prestaciones: que el recurrido restituya el mueble; y que la recurrente reembolse la cantidad de $2,112.93.

En igual fecha, la parte recurrente instó además una *Urgentísima Solicitud de Orden en Auxilio de Jurisdicción*, la cual fue declarada *No Ha Lugar* el 10 de diciembre de 2025. Entretanto, examinado el recurso ante nuestra consideración, el 12 de diciembre de 2025, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte recurrida para presentar su posición al recurso de revisión, así como un término de diez (10) al

foro administrativo para elevar el expediente original correspondiente al recurso.

Conforme a lo ordenado, el 16 de diciembre de 2025, el DACo instó una *Moción en Cumplimiento de Orden Elevando Autos Originales del Expediente Administrativo PON-2025-0005907.* Posteriormente, el 17 de diciembre de 2025, la parte recurrente presentó una *Moción Informativa sobre Reproducción de la Prueba Oral.* En atención a ello, emitimos una *Resolución* mediante la cual concedimos un término de treinta (30) días a la parte recurrente para presentar la transcripción de la prueba oral. Finalmente, el 29 de diciembre de 2025, la parte recurrida presentó su *Moción Sometiendo Posición al Recurso.*

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección,* 174 DPR 247, 254-255 (2008).

La Sección 4.2 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9672). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de

forma razonable. *Simpson, Passalacqua v. Quirós, Betances,* 214 DPR 370, 377 (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo,* 213 DPR 743, 753 (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra,* a las págs. 753-754; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transp. Sonell v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *OCS v. CODEPOLA,* 202 DPR 842, 852 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación

de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra,* a la pág. 754*; Otero v. Toyota,* 163 DPR 716, 729 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). Por ende, los tribunales deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados. Sin embargo, a la luz de *Loper Bright Enterprises v. Raimondo*, U.S., 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) y *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025), al revisar las conclusiones de derecho los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias.

Así pues, son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los

cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Vázquez et al. v. DACo, supra.* El foro judicial será quien deberá resolver todas las cuestiones de derecho pertinentes, las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y la revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. *Íd.*

Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* a la pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank, supra,* a las págs. 484-485; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923, 940 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, las determinaciones de derecho serán revisadas en su totalidad. Sección 4.5 de la LPAU, *supra*; *Rolón Martínez v. Supte. Policía,*

*supra*, a la pág. 36; *Torres Rivera v. Policía de PR*, 196 DPR 606, pág. 627.

Así pues, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Vázquez et al. v. DACo, supra.* Pero principalmente, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. *Íd.* Así, reiteramos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. *Íd.* Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

### B. Reglamento sobre Prácticas Comerciales

El Departamento de Asuntos del Consumidor (DACo) fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor. (3 LPRA sec. 341a). Dicha agencia se estableció con el fin primordial de vindicar e implementar los derechos del consumidor. (3 LPRA sec. 341b); Véase, además, *Ortiz Rolón v. Armando Soler Auto Sales*, Inc., 202 DPR 689, 696 (2019); *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 563 (2014).

En atención a ese mandato, el DACo cuenta con una estructura de adjudicación administrativa con plenos y amplios poderes para atender, adjudicar y resolver las querellas que se presenten ante su consideración, así como para conceder los remedios pertinentes conforme a derecho. *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363, 372 (2008).

En sintonía con lo anterior, la ley orgánica del DACo confirió al Secretario de la agencia diversos deberes y facultades, entre los cuales se destacan los siguientes:

[...]

(c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía.

[...]

(d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho. Disponiéndose que las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones. [...]

[...]

(i) Interponer **cualesquiera remedios** legales que fueran necesarios para hacer efectivos los propósitos de este capítulo y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento.

[...]

(j) Reglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio, **incluyendo la facultad de fiscalizar los reclamos sobre la calidad y demás cualidades de los productos y servicios**, realizados a través de los distintos medios de comunicación, así como requerir de los anunciantes evidencia de la veracidad de los reclamos realizados.

[...]

(3 LPRA sec. 341e). (Énfasis nuestro).

El Tribunal Supremo de Puerto Rico ha reconocido que la referencia estatutaria a "cualesquiera remedios" evidencia la intención legislativa de conferir al DACo amplios poderes correctivos, facultándolo a dictar las acciones necesarias para cumplir con el mandato de su ley habilitadora y, de ese modo, proteger efectivamente los derechos de los consumidores. *Suárez Figueroa v. Sabanera Real, Inc.,* 173 DPR 694, 705 (2008).

En el ejercicio de dichas facultades, el DACo promulgó el Reglamento de Prácticas Comerciales, Reglamento Núm. 9158 del 6 de febrero de 2020 (Reglamento Núm. 9158), con el propósito de agrupar y actualizar las medidas adoptadas por la agencia para regular determinadas prácticas comerciales en Puerto Rico, a fin de brindar seguridad y confianza a los consumidores. Véase, Regla 2,

Reglamento Núm. 9158, *supra*. Asimismo, el referido reglamento, persigue facilitar tanto a los comerciantes como a los consumidores la identificación de las prácticas comerciales permitidas y prohibidas, en atención a los derechos que DACo tiene el deber de salvaguardar. *Íd.*

Las disposiciones del Reglamento Núm. 9158 aplican "a toda persona natural o jurídica que se dedique, de forma permanente o incidental, por sí misma o mediante otra, o como intermediario, a ofrecer bienes o servicios a los consumidores en la jurisdicción del Gobierno de Puerto Rico". Véase, Regla 4, Reglamento Núm. 9158, *supra*. Además, el reglamento dispone expresamente que sus disposiciones deberán interpretarse liberalmente a favor del consumidor. Véase, Regla 3, Reglamento Núm. 9158, *supra*.

El Capítulo II del aludido Reglamento establece las disposiciones relativas a prácticas y anuncios engañosos, con el propósito de proveer directrices claras que los comerciantes deben observar para evitar incurrir en este tipo de conductas y, a su vez, proteger al consumidor. A tales efectos, el reglamento prohíbe expresamente las prácticas y anuncios engañosos, ambiguos o que puedan inducir a error, e impone deberes afirmativos de divulgación y claridad a los comerciantes.

En ese sentido, el Reglamento Núm. 9158 define un anuncio engañoso como "cualquier anuncio que constituya o tienda a constituir fraude, engaño o comunicar una idea falsa, confusa o incorrecta sobre el bien anunciado". Asimismo, considera engañoso aquel "anuncio que omita datos relevantes del producto, bien o servicio, limitando o privando al consumidor de tomar decisiones informadas y correctas". Véase, Regla 5(b), Reglamento Núm. 9158, *supra*. De igual forma, cataloga como práctica engañosa "exponer, vender u ofrecer para la venta productos de distinta categoría,

condición, clasificación o calidad inferior al anunciado". Véase, Regla 14(b), Reglamento Núm. 9158, *supra.*

Dentro de este marco normativo, el reglamento dispone que todo comerciante deberá divulgar de forma clara y adecuada los datos relevantes de un producto o servicio antes de efectuar su venta u ofrecimiento. Véase, Regla 16, Reglamento Núm. 9158, *supra.* Dicha divulgación deberá estar libre de ambigüedades que puedan confundir al consumidor. A su vez, todo anuncio deberá contener por escrito, de manera clara y adecuada, los datos relevantes del bien o servicio, incluyendo, cuando sea aplicable, el precio total, así como sus especificaciones, tales como modelo, año, componentes, características o garantías, siempre que por la naturaleza del bien anunciado sea necesario conocer dicha información. *Íd.*

Finalmente, la Regla 86 del Reglamento Núm. 9158, regula lo concerniente a las sanciones y penalidades que el DACo podrá imponer ante la infracción o incumplimiento de las disposiciones del aludido reglamento. Véase, Regla 86, Reglamento Núm. 9158, *supra.* Así, el DACo cuenta con autoridad legal y reglamentaria suficiente para fiscalizar prácticas comerciales engañosas y para imponer los remedios y sanciones correspondientes, conforme a los hechos que se determinen probados en cada caso.

**III.**

En su recurso, la parte recurrente aduce, en síntesis, que el foro administrativo erró al concluir que el consentimiento del consumidor estuvo viciado por un error esencial sobre una cualidad determinante del bien, al entender que la parte recurrente incumplió su deber de información y, en consecuencia, adjudicar que procedía la resolución del contrato con restitución recíproca de prestaciones. Fundamenta su planteamiento en que el foro administrativo basó su determinación únicamente en el testimonio de la parte recurrida, sin evidencia independiente que lo corroborara, cuando esta última

reconoció durante la vista administrativa que no era experta en materiales, que no solicitó explicación adicional sobre el término "*leather touch*" y que no existía documento alguno en el que se afirmara que el material del mueble era cuero íntegro. Asimismo, arguye que el mueble presentaba señales de desgaste normal por el uso, lo cual no constituía incumplimiento contractual ni dolo de su parte. Así, concluye que de la determinación recurrida no se desprende determinación de hecho alguna que demuestre intención de engañar, voluntad deliberada de falsear información o la búsqueda de un beneficio indebido mediante maniobra fraudulenta.

Por su parte, el señor Nolasco reitera que la empleada de la parte recurrente le aseguró que el mueble objeto de la presente controversia fue confeccionado en su totalidad con cuero genuino, proveniente de vacas bovinas, altamente resistente y duradero, y que, confiado en la supuesta calidad y durabilidad del producto, decidió adquirirlo. Manifiesta que en la factura provista por Ambiente Moderno no constaba descripción alguna del material del mueble, sino que únicamente se indicaba el término "*White Leather Touch*", y que, de haber contado con el conocimiento necesario sobre dicho material, no lo habría comprado. Así pues, concluye que la determinación del foro administrativo estuvo correctamente fundamentada, responde a la evidencia presentada y protege al consumidor, conforme dispone la Regla 16 sobre Divulgación de Datos Relevantes del Reglamento Núm. 9158, *supra*.

Como cuestión de umbral, es menester señalar que, luego de examinar el expediente ante esta Curia, constatamos que la parte recurrente no incluyó copia de la transcripción de la prueba oral vertida en la vista administrativa, pese a haberle sido concedido un término específico para ello mediante la Resolución de 19 de diciembre de 2025. Dicho incumplimiento tiene consecuencias procesales significativas para la adjudicación del recurso, toda vez

que la parte recurrente no ha colocado a este foro revisor en posición de evaluar las determinaciones de hechos realizadas por el organismo administrativo.

Es norma reiterada que, cuando la controversia gira en torno a la apreciación de la prueba, particularmente de la prueba testifical, la ausencia de la transcripción impide al tribunal revisor intervenir con las determinaciones de hechos del foro recurrido. En tales circunstancias, procede presumir que la actuación del foro primario fue correcta y conforme a derecho. Más aún, es principio medular de nuestro ordenamiento que las determinaciones de hechos de las agencias administrativas gozan de una presunción de corrección y merecen deferencia judicial, siempre que estén sostenidas por evidencia sustancial en el expediente administrativo. (3 LPRA sec. 9675). Véase, además, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000).

En el caso de autos, el único señalamiento de error planteado por la parte recurrente se fundamenta precisamente en la alegada apreciación errónea de la prueba por parte del DACo. Sin embargo, al no obrar ante nuestra consideración la transcripción de la prueba oral, este foro revisor carece de los elementos necesarios para evaluar la credibilidad de los testigos, el peso de sus testimonios y la razonabilidad de las inferencias realizadas por el ente administrativo.

Del expediente elevado surge que el DACo evaluó la prueba documental y testifical presentada por las partes y formuló determinaciones de hechos específicas que sustentan su conclusión de que el consumidor fue inducido a error respecto a la naturaleza del material del mueble adquirido. La parte recurrente no logró desvirtuar dichas determinaciones ni demostrar que las mismas carecen de apoyo en el expediente administrativo, máxime cuando

incumplió con su deber de facilitar la revisión judicial adecuada al no presentar la transcripción de la prueba oral.

En ausencia de la referida prueba, Ambiente Moderno no presentó ante nuestra consideración prueba suficiente que derrotara la presunción de legalidad y corrección que cobija la decisión recurrida. Siendo ello así, y conforme a la norma imperante en nuestro ordenamiento jurídico, debemos otorgar total deferencia a las determinaciones de hechos a las que arribó el DACo.

Cónsono con lo anterior, no podemos concluir que la determinación final del DACo haya sido una arbitraria, irrazonable o contraria a derecho. Por ello, procede que confirmemos en su totalidad el dictamen administrativo impugnado.

**IV.**

Por los fundamentos antes expuestos, se *confirma* la *Resolución* emitida el 6 de noviembre de 2025 por el Departamento de Asuntos al Consumidor.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones